No. 80-462

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

CONSOLIDATED DAIRIES OF LAKE COUNTY, INC.,

Petitioner and Respondent,

vs.

AMERICAN ABSTRACT AND TITLE CO., FIRST
CITIZENS BANK OF POLSON, DOUGLAS K. STAM,
et al.,

Respondents and Appellants.

---

Appeal from:  District Court of the Fourth Judicial District,
              In and for the County of Lake.
              Honorable Jack L. Green, Judge presiding.

Counsel of Record:

  For Appellants:

    Hash, Jellison, O'Brien and Bartlett, Kalispell,
     Montana
    James C. Bartlett argued, Kalispell, Montana

    Mike Greely, Attorney General, Helena, Montana

  For Respondent:

    John R. Frederick argued, Polson, Montana
    Williams Law Firm, Missoula, Montana
    Richard Ranney argued, Missoula, Montana

---

Submitted:  April 22, 1981

Decided: JUN 1 0 1981

Filed: JUN 1 0 1981

*Thomas J. Kearney*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a judgment setting aside a trustee's sale and directing that the sale be reconducted.

Once in a great while the wrath of mother nature tempers even the power and authority of law. On the quiet Sunday evening of May 18, 1980, in the northwest corner of the United States, an explosion occurred with a magnitude and energy of 500 Hiroshima atomic bombs. A dust cloud of unknown toxicity spread over the entire Northwest. News reports indicated that the exact nature and possible effects of the dust were undetermined. People were strongly advised to remain at home, but if they had to go out, to wear protective masks. A psychological shock wave of unbelief quickly rolled across the Pacific Northwest.

When the dust had settled and the panic subsided, it was discovered that a relatively dormant volcano in the State of Washington, Mount St. Helens, had erupted and continued eruptive activity. During a period of four days this part of the living world stood still. Towns and cities seemed deserted and abandoned. The once green landscape budding with spring colors against a blue sky was gray and bleak.

Prior to this marvel of nature's power, a group of people in the Polson, Montana, area were conducting business, unsuspecting that in a few days they would have a rendevous with nature...

That group consisted of petitioner-respondent herein, Consolidated Dairies of Lake County, Inc., and appellants herein, the title company (American Abstract and Title Co.), the bank (First Citizens Bank of Polson), the Stams (Douglas

K. and Lenore Kay Stam) and the Blankenhorns (Charles E. and Karen K. Blankenhorn).

The Blankenhorns own a house and lot in Polson, Montana. This real property is subject to (1) a trust indenture in favor of the bank securing a $46,000 note, filed of record September 15, 1977, and (2) a mortgage in favor of Consolidated, securing a promissory note for $55,000 filed of record August 17, 1979. At the end of 1979, Blankenhorns defaulted in payments on the bank note. Consequently, the bank instructed the trustee of the trust indenture, which was the title company, to hold a trustee's sale of the property pursuant to the trust indenture and the Small Tract Financing Act. (Section 71-1-301 et seq., MCA).

The title company, acting through its president, Russell Harshberger, proceeded to notice such a sale. After substituting attorney James Bartlett as trustee, an amended notice of trustee's sale was filed of record on January 16, 1980. This amended notice recited that the property would be sold "at public auction to the highest bidder in cash" on May 21, 1980, at 11:00 a.m. at the entrance to the courthouse of Lake County in Polson. Copies of this amended notice were mailed to the Blankenhorns and to Consolidated.

As it turned out, May 21, 1980, was an unfortunate choice. On May 18, 1980, the Mount St. Helens volcano erupted. On May 19, 1980 (Monday), Lake County and most of western Montana was covered with a layer of fine volcanic ash.

On that same day, in response to this ash fallout, the Montana Department of Health and Environmental Sciences issued a "Declaration of Emergency, Findings of Fact and

Emergency Order to All Persons in the State of Montana." This order, among other things, ordered closure of "all offices of local, county and state government, including authorities, joint meetings, and other public bodies . . . all retail trade establishments with certain exceptions . . . banks, credit agencies other than banks . . . real estate offices . . . all schools and universities, and in general all business establishments with certain necessary exceptions." In addition, "all unnecessary use of motor vehicles [was] prohibited."

The District Court took judicial notice of the conditions prevailing during this period of ash fallout and the reactions and attitudes of the general population. People were essentially confined to their homes both by fear for their health if they ventured outdoors and by the widely publicized order described above.

On May 21, 1980, the day for which the trustee's sale was noticed, Lake County and most of western Montana were still subject to the above order and to the ash fallout. The title company was not open for business. The Lake County Courthouse was closed. Lake County was released to an "alert" level on May 22, 1980, and all restrictions were lifted on May 23, 1980.

On May 21, 1980, at 11:00 a.m. Russell Harshberger proceeded to the courthouse steps. He "proclaimed to the public" that the sale noticed for that time and place was postponed to May 27, 1980, at the same place at 11:00 a.m. No one was there to listen to the proclamation.

Later that day, Doug Stam came to Harshberger's office and was informed of the time and place of the

postponed sale. The next working day after restrictions were lifted, the bank inquired of Harshberger what had happened. The bank was informed of the time and place of the postponed sale. No other persons or organizations (other than attorney Bartlett) were notified by Harshberger or the title company of the day and time of the postponed sale or that it had been postponed. In particular, Consolidated was not notified. No notices were posted nor advertising conducted concerning the postponement of the sale.

On May 27, 1980, at around 10:00 a.m., affidavits of publication and posting were first recorded. At 11:00 a.m. Harshberger proceeded to the courthouse steps. Present at this time were a director of the bank, Charles Blankenhorn, an employee of the title company, and the Stams. The bidding was started at $51,356.66. The sole bid was that of the Stams for $51,357.66.

The Stams' bid of $51,357.66 was accepted, and in five minutes they presented Harshberger with a cashier's check in that amount. Following the sale, the title company did not inform or notify Consolidated that the sale had been accomplished. There is evidence that the property in question was worth between $75,000 and $85,000.

Consolidated filed a petition in the District Court of the Fourth Judical District of the State of Montana to set aside the trustee's sale. All parties filed answers to the petition. The parties filed an agreed statement of facts and stipulated to have the cause submitted to the District Court based on that statement.

The District Court entered findings of fact,

conclusions of law, and order setting the trustee's sale aside. American Abstract, the trustee, and the bank, as beneficiary, have appealed.

The District Court found, in the unique circumstances presented by the facts of this case, two separate reasons for setting aside the trustee's sale. First, the postponement of the sale merely by oral proclamation at the time and place fixed in the notice of sale was not legally sufficient notice under the Small Tract Financing Act, section 71-1-301 et seq., MCA, as applied to the unique circumstances of this case. Second, if the Small Tract Financing Act were interpreted to permit the type of notice of postponed sale employed by the trustee in this case, then the Act, as applied to Consolidated in this case, would be unconstitutional as violating the due process clause of the United States and Montana Constitutions.

The relevant statute is section 71-1-315(3), MCA, which provides:

> ". . . The person making the sale may, for any cause he deems expedient, postpone the sale for a period not exceeding 15 days by public proclamation at the time and place fixed in the notice of sale. No other notice of the postponed sale need be given."

The relevant contractual provision of the trust indenture is:

> "14. . . . The person conducting the sale may, for any cause he deems expedient, postpone the sale for a period not exceeding fifteen (15) days by public proclamation by such person at the time and place fixed in the Notice of Sale, and no other notice of the postponed sale need be given . . ."

Appellants contend that the title company complied with the contractual provisions of the trust indenture and fully complied with the Small Tract Financing Act. Thus,

-6-

appellants argue, the District Court was without authority to set aside the trustee sale. We disagree.

While the notice by public proclamation at the time and place fixed in the notice of sale was sufficient to meet the technical requirements of both the law and the trust indenture instrument, it was not sufficient in the present case. As a practical matter, because of the volcanic eruption and the declared emergency, potential purchasers, subsequent lienholders and the public in general were not able to attend at the time and place fixed in the notice of sale.

Where potential purchasers, subsequent lienholders, and the public in general are practically and legally prevented from traveling to and attending at the time and place noticed for the sale, the giving of notice of a postponed sale only by "public proclamation at the time and place fixed in the notice of sale" is a futile act, of no practical or legal significance. The provisions of section 71-1-315(3), MCA, apply to normal situations where there is no state of general emergency preventing potential purchasers, subsequent lienholders and the public in general from attending at the time and place fixed in the notice of sale.

Under the circumstances of this case, notice of a postponed sale only by "public proclamation at the time fixed in the notice of sale" is not reasonably calculated to apprise all interested parties of the details of the postponed sale, and so is in violation of the due process clause of the United States and Montana Constitutions. Great Falls National Bank v. McCormick (1968), 152 Mont.

319, 448 P.2d 991.

It was practically and legally difficult for the general public, potential purchasers and lienholders to attend the time and place of the notice of the sale. Because of these facts, the "public proclamation" of the postponed sale at the time and place of the trustee sale would not have the effect of notifying all those interested persons of the time and place of the postponed sale and all interested parties were not apprised of the notification.

The District Court did not look at the literal words of the statute, but instead looked to all of the facts and the intent of the legislation. Postponing a noticed sale only by way of a public proclamation at the time and place where no one was present and no interested person could legally or practically be present at and giving no further notice of the postponed sale is not calculated to obtain a fair price for the property, nor was it reasonably calculated to apprise all interested parties of the pendency of the action.

We affirm the District Court in setting aside the trustee sale and find proper the remedy to reconduct the trustee sale as provided in the judgment.

John Conway Harrison
Justice

-8-

We concur:

_____
Chief Justice

_____

_____

_____
Justices